CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/31/2019
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **ANGELIA L.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:18-cv-48 |
| | ) |
| **ANDREW SAUL,**[1] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Angelia L. ("Angelia") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Angelia alleges that the Administrative Law Judge ("ALJ") erred because substantial evidence does not support (1) his evaluation of certain medical opinion evidence, and (2) his assessment of Angelia's subjective allegations of impairment. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND DENYING** Angelia's Motion for Summary Judgment (Dkt. No. 12) and **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Angelia failed to demonstrate that she was disabled

---

[1] While Angelia's case has been pending, the new Commissioner of Social Security, Andrew Saul, has replaced the prior Acting Commissioner, Nancy Berryhill.

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Angelia filed for DIB on February 6, 2015, and SSI on February 2, 2015, claiming disability due to impingement syndrome, open wound on her ring finger, open fracture in her finger, closed fracture in her finger, tenosynovitis in her hand, and bicipital tenosynovitis, with an alleged onset date of September 12, 2012. R. 57, 70. Angelia was 50 years old when she applied for DIB and SSI, making her 47 years old on her alleged onset date. Id. Angelia's date last insured was December 31, 2012; thus, she must show that her disability began on or before December 31, 2012, and existed for twelve continuous months to receive DIB. Id.; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Additionally, to receive SSI, Angelia must show that she has been disabled for at least twelve months prior to the date of filing her disability application. R. 70. The state agency denied Angelia's applications at the initial and reconsideration levels of administrative review. R. 57–93. On January 26, 2017, ALJ Theodore W. Amos held a hearing to consider Angelia's claims for DIB and SSI. R. 29–50. Counsel represented Angelia at the hearing, which included testimony from vocational expert

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

Beth Crane. R. 29. On April 10, 2017, the ALJ entered his decision analyzing Angelia's claims under the familiar five-step process[3] and denying her claim for benefits. R. 10–24.

The ALJ found that Angelia had not engaged in substantial gainful activity since September 12, 2012, the alleged onset date. R. 12. The ALJ determined that Angelia suffered from the severe impairments of disorders of the fingers, hands, shoulders, and back. R. 12–13. The ALJ found Angelia's headaches to be non-severe. R. 12. The ALJ determined that Angelia's impairments, either individually or in combination, did not meet or medically equal a listed impairment, specifically considering listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 1.07 (fractures of the upper extremities). R. 13–14. As for mental impairments, the ALJ determined that Angelia's anxiety and depression were non-severe, and found that she had no more than mild limitations with respect to any of the "paragraph B" criteria. R. 13.

The ALJ concluded that Angelia retained the residual functional capacity ("RFC") to perform light work. R. 14. Angelia's postural limitations included never climbing ladders, ropes, or scaffolds; occasional crawling; and frequent balancing, stooping, kneeling, crouching, and climbing ramps and stairs. Id. Angelia could occasionally push and pull with her upper extremities, and only occasionally reach, handle, finger, and feel. R. 14–15. For environmental limitations, the ALJ found that Angelia could have occasional exposure to extreme cold, wetness, and work hazards. R. 14–15. The ALJ determined that Angelia is unable to perform her past work as a screen printing machine operator helper or cut-off saw operator, but could still

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

perform jobs that exist in significant numbers in the national economy, such as counter clerk, furniture rental consultant, and usher. R. 22–23. The ALJ ultimately concluded that Angelia was not disabled. R. 23–24. The Appeals Council denied Angelia's request for review on February 27, 2018. R. 1–6.

## ANALYSIS

Angelia alleges that the Administrative Law Judge ("ALJ") erred because substantial evidence does not support (1) his evaluation of certain medical opinion evidence, and (2) his assessment of Angelia's subjective allegations of impairment.

### A. Medical History

1. Physical Impairments

In September 2012, the third, fourth, and fifth fingers of Angelia's right hand were caught in a printing press. R. 60, 262. She had a large laceration on the fourth finger, comminuted fractures of the ungula tufts of the third and fourth fingers, and a chip fracture in the third finger. R. 265–66, 420. Follow-up x-rays showed that there were probably fractures in the fifth finger that were not visible initially. R. 502. Angelia's temporary work restriction was no use of the right hand. R. 420–21, 425, 428, 434.

Angelia later began seeing James Dunstan, M.D., who sent her to physical therapy and recommended work restrictions. In October 2012, Angelia began physical therapy (R. 440, 445, 447–48, 453), which she continued through November (R. 459–60, 462, 466–67, 469–70, 480–83) and December (R. 486–87, 489–90, 492, 505, 508). In November 2012, Angelia began trying to use her hands for activities of daily living, but she was still on pain medication. R. 451, 456, 473. In December 2012, Angelia developed bursitis in her right shoulder, for which she started physical therapy. R. 495. Imaging studies showed no acute abnormality. R. 500. At that time,

because her hand fractures had healed, Dr. Dunstan recommended that Angelia start aggressive PT, and amended her work restriction to light sedentary work with a five-pound weight limit for her hand. R. 495, 502. Additionally, Angelia was no longer on pain medication, just ibuprofen. R. 495. Dr. Dunstan noted later that month that Angelia "can work and has been able to work," but there were no opportunities for modified work at her place of employment. R. 506.

In 2013, Angelia continued attending physical therapy in January (R. 342–44, 346, 349–50, 356–58, 362–63), February (R. 355, 373–74, 376–79, 382–83, 385), and March (R. 392, 394, 402). In January 2013, Dr. Dunstan modified Angelia's temporary restriction to light work with a ten-pound weight limit for her hand, and recommended that Angelia start trying to do more at work. R. 338. In February 2013, Dr. Dunstan modified Angelia's restriction to a twenty-pound weight limitation and said it would be safe for her to use her hand as much as possible. R. 367. In March 2013, Dr. Dunstan recommended that Angelia end PT and continue with only home exercises, as Angelia's pain was really improving, she reached vasomotor stability, and her shoulder was much improved. R. 389–90, 398. Upon discharge from PT in April 2013, Angelia had increased range of motion, grip strength, and functional use in her right hand (including lifting, carrying, and fine motor abilities), and improved range of motion and strength with decreased pain in her right shoulder. R. 406. She was still unable to perform her prior job duties because she was limited in her abilities to grip, pinch, and manipulate objections. Id. Dr. Dunstan kept the twenty-pound restriction, and in April 2013, he reported that Angelia had reached maximum medical improvement. R. 411. Angelia had no remaining limitations in her shoulder. R. 412. In May 2013, Dr. Dunstan estimated that Angelia had a partial permanent impairment of 25% in her right hand, resulting in a 23% impairment of her right upper extremity. R. 414. She had no permanent impairment in her shoulder, and she was employable and able to do work not

5

requiring the dexterity of her former job. Id.

In February 2015, Angelia went to the hospital after falling and injuring her left ring finger, but x-rays showed no acute abnormality. R. 270–72. Dr. Angelo Dacus later determined that Angelia had PIP arthritis in her left ring finger, for which he recommended exercises and physical therapy. R. 284. He also assessed right trigger thumb, for which Angelia received an injection. R. 284–85. In August 2016, Dr. David Hryvniak assessed Angelia for low back pain and diagnosed chronic left-side low back pain with sciatica and prescribed medication. R. 311–12. Angelia was referred for a cervical spine MRI in August 2016 and to PT, but the record does not contain any documents for results or diagnoses from either. R. 320–21.

At the hearing, Angelia testified that she is right-handed. R. 35. Angelia testified to not being able to do any "heavy lifting" with her right hand, and she drops things without warning. R. 37. While she primarily has problems with her right hand, Angelia had nerve replacement surgery on her left hand in 2015 and cannot bend her left ring finger. R. 38. She testified to having very little feeling in her right hand, and no feeling in the last three fingers. Id. She has feeling in her left hand. Id. Angelia testified that, in terms of daily living, she is slow to get dressed because she has to use her left hand for buttons and zippers. R. 40. Angelia still drives. She cannot pick up money, but she can write with the two good fingers in her right hand. R. 43.

  2. Medical Opinion Evidence

In June 2015, Reza Imani-Shikhabadi, M.D., completed a consultative examination for the state agency. R. 289. Dr. Imani-Shikhabadi diagnosed posttraumatic injury to the right hand. R. 292. He observed that Angelia had decreased flexion in the DIP joints in the third, fourth, and fifth fingers of her right hand, decreased flexion in the DIP joints in the fourth and fifth fingers in her left hand, and had difficulties twisting off a bottle cap and picking up a paper clip with her

6

right hand. Id. Dr. Imani-Shikhabadi also found that Angelia had decreased sensation in the fingertips of her right hand. Id. Angelia had 4 out of 5 grip strength bilaterally, and 5 out of 5 strength in both upper extremities. Id. Dr. Imani-Shikhabadi determined that Angelia could sit and stand or walk for eight hours in an eight-hour workday, and could carry ten pounds occasionally and less than ten pounds frequently. Id. Dr. Imani-Shikhabadi determined that Angelia should be able to reach, handle, feel, grasp, and finger occasionally. R. 293.

In July 2015, as part of the state agency's initial disability determination, Bert Spetzler, M.D., reviewed the record and determined that Angelia's severe medically determinable impairment relating to her DIB claim included other fracture of bones. R. 66. He did not make a RFC determination, writing that the evidence on file was "not sufficient to fully evaluate [her] claim," and the necessary evidence could not be obtained. R. 68. Accordingly, he found that Angelia was not disabled because her condition was not disabling on any date through her DLI. Id. Regarding her SSI claim, Dr. Spetzler determined that Angelia had the severe impairments of other fracture of bones and osteoarthrosis/allied disorders. R. 79. In his RFC analysis, Dr. Spetzler determined that Angelia could lift or carry twenty pounds occasionally and ten pounds frequently, and stand or walk and sit each for six hours in an eight-hour workday. R. 80. Angelia was limited in her left upper extremity to occasional pushing and pulling. Id. For postural limitations, Dr. Spetzler determined that Angelia would be able to frequently climb ramps and stairs; occasionally crawl and climb ladders, ropes, and scaffolds; and balance, stoop, kneel, and crouch without limitation. R. 80–81. For manipulative limitations, Dr. Spetzler found that Angelia could reach in any direction without limitation, but was limited in her left upper extremity in handling and fingering, and limited in her right upper extremity with feeling. R. 81. Dr. Spetzler found no visual or communicative limitations. R. 82. For environmental limitations,

he determined that Angelia would have to avoid even moderate exposure to hazards, such as machinery and heights. Id. Dr. Spetzler ultimately concluded that Angelia was capable of light work and so was not disabled. R. 84.

As part of the reconsideration of the state agency's disability determination, Robert Weisberg evaluated the records in August 2015. He determined that Angelia's severe medically determinable impairments regarding her DIB application included other fracture of bones and osteoarthrosis/allied disorders. R. 91. He also found that Angelia was not disabled because there was no evidence demonstrating a disabling condition prior to her DLI. R. 92–93. Regarding her SSI application, Dr. Weisberg found that Angelia had the same severe medically determinable impairments as Dr. Spetzler, but modified Dr. Spetzler's RFC finding. R. 99. Dr. Weisberg determined that Angelia could lift or carry fifty pounds occasionally and twenty-five pounds frequently; stand or walk and sit each for six hours in an eight-hour workday; and push or pull without limitation. R. 100–01. For postural limitations, he determined that Angelia could only occasionally crawl and never climb ladders, ropes, or scaffolds, but could climb ramps and stairs, balance, stoop, kneel, and crouch without limitation. R. 101. For manipulative limitations, Dr. Weisberg found that Angelia could reach in any direction and feel without limitation, but was limited in both upper extremities in handling and fingering. Id. Dr. Weisberg found no visual or communicative limitations. R. 101–02. Finally, for environmental limitations, he determined that Angelia must avoid concentrated exposure to extreme cold and wetness, and even moderate exposure to hazards, such as machinery and heights. R. 102. Dr. Weisberg concluded that Angelia was capable of medium work and thus found her not disabled. R. 104.

### B. ALJ's Assessment of Opinion Evidence

Angelia argues that the ALJ erred in his weighing of different medical opinions in the

record. Specifically, Angelia argues that the ALJ erred in giving greater weight to Dr. Spetzler, a non-treating physician, than to Dr. Imani-Shikhabadi, an "examining physician." Pl.'s Br. at 4, Dkt. No. 13. Angelia alleges that the ALJ also erred in his evaluation of Dr. Dunstan's opinion overall. Id. at 6. The Commissioner asserts that Angelia asks the Court to reevaluate and, thus, reweigh the medical opinion evidence, which is improper. Def.'s Br. at 9, Dkt. No. 16.

1. Opinions of Drs. Spetzler and Imani-Shikhabadi

Angelia first argues that the ALJ erred in giving great weight to Dr. Spetzler's opinion because in doing so, the ALJ mistakenly reduced the weight accorded to Dr. Imani-Shikhabadi's opinion. Pl.'s Br. at 4. The ALJ erred in comparing Dr. Imani-Shikhabadi's opinion to Angelia's physical therapist's notes because Dr. Imani-Shikhabadi examined Angelia more than two years after Angelia attended physical therapy. Id. at 5. During that time, Angelia developed "trigger thumb" and "completely lost" flexion in the joints of three fingers on her right hand and two fingers on her left hand. Id. The Commissioner argues that the ALJ's decision was not in error because the ALJ reasonably considered the medical evidence and its consistency with the opinions of Drs. Spetzler and Imani-Shikhabadi.[4] Def.'s Br. at 8–10.

The regulations require an ALJ to evaluate a one-time evaluator, such as Drs. Spetzler and Imani-Shikhabadi, using the factors outlined in the regulations, and to expressly indicate and explain the weight he accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Consultative examiners do not constitute treating sources under the regulations, and thus their opinions generally do not warrant controlling weight. See 20 CFR 404.1527(c)(2), 416.927(c)(2); Carter v. Colvin, 1:15CV00981, 2016 WL 4487778, at *11 (M.D.N.C. Aug. 25,

---

[4] Angelia challenges only one RFC limitation, namely, that Angelia can carry twenty pounds occasionally and ten pounds frequently. Dr. Spetzler also made this finding (R. 80), whereas Dr. Imani-Shikhabadi estimated that Angelia could carry only ten pounds occasionally and less than ten pounds frequently (R. 292). Out of the remaining limitations that Dr. Imani-Shikhabadi proposed, the ALJ imposed greater limitations in Angelia's favor. See R. 14, 292–93.

9

2016).[5] However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight accorded to such opinions. See 20 CFR 404.1527(c), 416.927(c).

Here, the ALJ adequately discussed the findings and opinions of both consulting physicians and explained why he adopted the limitation of lifting and carrying twenty pounds occasionally and ten pounds frequently. In explaining the partial weight that the ALJ accorded to Dr. Imani-Shikhabadi's opinion, the ALJ wrote:

> Dr. Imani-Shikhabadi had noted findings of decreased range of motion in DIP joints, and decreased sensation and grip strength in the right hand, but normal strength in both upper extremities. These findings do not support a 10-pound lifting/carrying limitation, which is also inconsistent with the findings by the claimant's physical therapist, who had noted a demonstrated ability to lift 30 pounds with the right hand, and the conclusions of Dr. Dunstan that she could safely work with 20 pounds. However, the remainder of the opinion is reasonably consistent with the overall record.

R. 20. The ALJ specifically indicated which part of Dr. Imani-Shikhabadi's opinion he found to be inconsistent with the evidence and explained his reasoning. Elsewhere in his opinion, after thoroughly explaining the medical evidence of record, the ALJ correctly observed that after May 2013, there is no evidence of any medical treatment until February 2015 (and then only Dr. Imani-Shikhabadi's June 2015 evaluation and sparse records from 2016 after that). R. 18. The ALJ accurately observed that the medical record does not document ongoing symptoms, abnormalities, or treatment, but rather very sporadic treatment. Id. Thus, while Dr. Imani-Shikhabadi made certain findings regarding Angelia's flexion, the ALJ adequately explained that he analyzed Dr. Imani-Shikhabadi's conclusions for consistency with the record which, in front

---

[5] This is different from the treating source rule that generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment, provided that the opinion is well supported and not inconsistent with other substantial evidence in the recod. 20 CFR 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

of the ALJ, was sparse between Angelia's follow-up treatment for her hand ending in May 2013 and Dr. Imani-Shikhabadi's examination in June 2015.

Angelia correctly notes that the consultative examination came two years after her treatment for the initial injury, but fails to recognize that there was barely any other evidence after that. The ALJ was entitled to compare Dr. Imani-Shikhabadi's opinion to Dr. Dunstan's and the physical therapy evidence (both showing that Angelia could lift more than twenty pounds). In fact, the regulations instruct the ALJ to examine an opinion and its consistency with the record as a whole. The ALJ considered Dr. Imani-Shikhabadi's opinion, together with the evidence in the record, and provided a reasonable explanation. Accordingly, I find that substantial evidence supports the ALJ's evaluation of Dr. Imani-Shikhabadi's opinion.[6]

Angelia alleges that, because the ALJ erred in weighing Dr. Imani-Shikhabadi's opinion, he also erred in his analysis of Dr. Spetzler's opinion. Angelia misses the key point that Dr. Spetzler reviewed the records *after* Dr. Imani-Shikhabadi examined her and came to the conclusion that she could lift or carry twenty pounds frequently and ten pounds occasionally. See R. 78. Additionally, the ALJ explained that he gave Dr. Spetzler's opinion great weight because it was reasonably consistent with the overall medical record, "including Dr. Dunstan's statements as to the claimant's 20-pound limitation and the physical therapist's notes as to the claimant's demonstrated abilities," and incorporated Angelia's subjective complaints. R. 21. The ALJ again adequately explained how the medical opinions evidence specifically factored into his RFC determination regarding Angelia's ability to lift or carry weight.

Accordingly, I find that substantial evidence supports the ALJ's analyses of both medical

---

[6] Angelia argues later that the ALJ erred in not mentioning Dr. Imani-Shikhabadi's "specific findings," and provided the analogy that ignoring the specific findings is like saying that "at a certain point in the play, President Lincoln developed a headache." Pl.'s Br. at 7. The ALJ provided an accurate and holistic summary of Dr. Imani-Shikhabadi's findings, so it is unclear what Angelia asserts the ALJ should have done instead.

opinions. It is not for this Court to reweigh the medical opinion evidence where substantial evidence supports the ALJ's evaluations of both opinions.

    2.   Opinion of Dr. Dunstan

Angelia additionally alleges that the ALJ erred in his analysis of Dr. Dunstan's opinion, arguing that Dr. Dunstan "failed to foresee . . . that [Angelia] would get worse." Pl.'s Br. at 6. Angelia alleges that Dr. Imani-Shikhabadi's in-person observations of Angelia's condition deprive Dr. Dunstan's opinion of any weight. Id.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Dr. Dunstan treated Angelia over the course of her entire recovery from her hand injury, which Angelia does not dispute.

As discussed, substantial evidence supports the ALJ's evaluation of Dr. Imani-Shikhabadi's opinion; thus, I reject Angelia's assertion that Dr. Imani-Shikhabadi's opinion deprives Dr. Dunstan's of any relevance. Beyond her argument that her condition worsened since she last saw Dr. Dunstan, Angelia does not otherwise dispute the ALJ's evaluation of Dr. Dunstan's opinion, and for good reason. The ALJ spent almost two full, single-spaced pages in his decision discussing Dr. Dunstan's findings, which spanned from September 2012 to May 2013. R. 18–20. After thoroughly describing the treatment records, the ALJ explained how he weighed Dr. Dunstan's different opinions over the course of his treatment of Angelia,

particularly relating to Dr. Dunstan's temporary restrictions, opinion as to whether Angelia could work, and partial permanent impairment assessment. Id. In fact, the ALJ assigned Dr. Dunstan's temporary limitations little weight because he did not see Angelia beyond 2013, and the record does not allow for a reasonable inference that the temporary limitations Dr. Dunstan noted during that period would have continued beyond 2013. R. 19. The ALJ explained that he gave great weight, however, to Dr. Dunstan's opinion that Angelia could work, and to Dr. Dunstan's permanent partial impairment assessment. The ALJ explained that those conclusions were "reasonably consistent" with Dr. Dunstan's findings during his long treatment relationship with Angelia and with Angelia's physical therapy; encompassed Angelia's limitations and were consistent with the longitudinal record; and were consistent with Angelia's testimony. R. 19. Specifically for the PPI assessment, the ALJ emphasized that Dr. Dunstan made that evaluation after Angelia reached maximum medical improvement. R. 20. Thus, there is ample evidence to support the ALJ's assessments of Dr. Dunstan's opinions. The ALJ thoroughly explained his analyses, and appropriately used Dr. Dunstan's opinions to support his decision. I find no error.

### C. Subjective Allegations of Impairment

Angelia last argues that the ALJ erred in his analysis of Angelia's subjective allegations of impairment.

#### 1. Periods of No Treatment

Angelia first alleges that the ALJ violated SSR 16-3p because he did not inquire into possible reasons as to why Angelia did not seek treatment between May 2013 and February 2015, and February 2015 and February 2016. Pl.'s Br. at 7–8, Dkt. No. 13. The Commissioner counters that the ALJ is under no affirmative duty to conduct a formal "inquiry" into why a claimant has not sought treatment in a manner consistent with her complaints, particularly

13

because a claimant has the burden of establishing disability. Def.'s Br. at 11–12, Dkt. No. 16.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3; §§ 404.1529(b), 416.929(b) (2017). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4. If the frequency or extent of treatment a claimant seeks is not comparable with the claimant's subjective complaints, an ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence, as long as the ALJ considers the possible reasons the claimant may not have sought treatment consistent with her complaints. Id. at *9.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's assessment of a claimant's statements, except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings

of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, the ALJ determined:

> [Angelia's] medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms; however, [Angelia's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

R. 15–16. Later in his decision, the ALJ discussed that, although Angelia alleges ongoing symptoms and treatment, there is no evidence of any medical treatment during the periods at issue, and the 2016 medical records document only "minimal and sporadic treatment." R. 18. The ALJ concluded, "The medical record therefore does not document ongoing symptoms, abnormalities, or treatment throughout the period in question, which is inconsistent with [Angelia's] allegations as to the persistence and limiting effects of her symptoms, as is [Angelia's] documented improvement during the first several months after her work injury." Id. The ALJ last noted that there is little evidence to support Angelia's allegations regarding use of her left hand; no evidence of a nerve replacement surgery; no evidence of ongoing complaints regarding her ability to use her right hand; and no examination findings to corroborate her testimony that she has no sensation in three fingers on her right hand or is unable to lift things or make a fist. Id. Angelia herself testified that she is still able to do daily activities, even though it takes a little longer because she uses her left hand. Id. Thus, substantial evidence supports the ALJ's ultimate conclusion that "the objective medical record and [Angelia's] admitted abilities to perform activities of daily living, just slower or with more reliance on her left hand, does not

support her allegations as to the persistence or limiting effects of her symptoms, or the extent of her alleged functional limitations." Id.

Furthermore, Angelia fails to provide a reason as to why the record is devoid of evidence during the time periods at issue. The ALJ is obligated to "review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects." SSR 16-3p, 2017 WL 5180304, at *10. The ALJ is also entitled to consider that Angelia's "symptoms may not be severe enough to prompt . . . her to seek treatment." Id. The ALJ devoted almost an entire page of his opinion to his discussion of the lack of medical records and explained how that impacted his evaluation of Angelia's subjective complaints and, ultimately, his decision. See id. Substantial evidence supports the ALJ's assessment of the lack of treatment records, as he adequately explained that he found them to be inconsistent with an individual who experiences debilitating symptoms. Karnes v. Colvin, No. 6:12–cv–00053, 2015 WL 1477891, at *9 (W.D. Va. Mar. 31, 2015) (citing Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (failure to seek treatment can be basis for discounting a claimant's statements)).

2. Standard Applied

Angelia also argues that the ALJ applied the wrong standard in evaluating the consistency of her statements with the record. Pl.'s Br. at 8–9, Dkt. No. 13. Angelia alleges that the standard the ALJ applied in this case instructs that a claimant's allegations must be "entirely consistent" with the medical and other evidence. Pl.'s Br. at 9. The Commissioner counters that the ALJ clearly applied the correct standard in his decision. Def.'s Br. at 14–15.

In determining whether an individual is disabled, the SSA considers all of the claimant's symptoms, including pain, and the extent to which her symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a)

(2017). At the outset, Angelia completely misstates the ALJ's conclusion. The ALJ wrote,

> [Angelia's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they *can reasonably be accepted as consistent with the objective medical and other evidence*.

R. 15–16 (emphasis added). The ALJ employed the correct standard, as he stated incorporated it verbatim into his conclusion. Additionally, as discussed, the ALJ's extensive and thorough assessment of Angelia's subjective allegations of impairment does not leave this Court to guess at how he arrived at his conclusions, and there is more than substantial evidence to support his decision in that regard. Accordingly, I find Angelia's last assignment of error to be without merit.

## CONCLUSION

The ALJ here was exceptional in reviewing the entire record and discussing the objective and subjective evidence, thoroughly explaining his conclusions, and providing the evidence that supported those conclusions. I simply cannot find that substantial evidence does not support the ALJ's entire opinion. Accordingly, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Angelia's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: July 31, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge